IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Electronically Filed |
| | ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | |
| v. | ) ) | COMPLAINT AND JURY TRIAL DEMAND |
| P.H. GLATFELTER, | ) ) | |
| Defendant, | ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act ("the ADA") of 1990, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to Charles A. Stevens ("Stevens") and a class of similarly aggrieved post-offer applicants and employees who were subjected to and/or adversely affected by the unlawful employment practices described below. As alleged with greater particularity in the Statement of Claims, P.H. Glatfelter ("Glatfelter") voluntarily adopted for positions involving operation of Powered Industrial Trucks ("PITs") (e.g., forklifts, lift trucks, and similar industrial vehicles) a physical qualification standard derived from the Department of Transportation's Federal Motor Carrier Safety Administration's ("DOT") physical qualifications for drivers of Commercial Motor

1

Vehicles. Glatfelter's DOT-based qualification standard for positions involving PITs is overly broad and unlawful and results in adverse employment actions against individuals with actual or perceived disabilities. In applying its qualification standard, Glatfelter also requires that post-offer applicants and current employees seeking to work in the covered positions submit to medical exams and inquiries, where such exams and inquiries are unlawful as to current employees. The foregoing conduct, as described in more detail below, is in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper as the employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the "EEOC" or "Commission"), is the Agency of the United States of America charged with the administration, interpretation, and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. Glatfelter is a Pennsylvania corporation that has been continuously doing business in the Commonwealth of Pennsylvania.

5. Glatfelter is a multi-national paper products manufacturer with major domestic production and manufacturing facilities in Spring Grove, Pennsylvania, and Chillicothe, Ohio.

6. At all relevant times Glatfelter has continuously employed at least 15 (fifteen) employees.

7. At all relevant times, Glatfelter has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e (g) and (h).

8. At all relevant times Glatfelter has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## CONDITIONS PRECEDENT

9. More than thirty days prior to the institution of this lawsuit, Stevens filed a Charge of Discrimination with the Commission alleging violations of the ADA by Glatfelter.

10. After investigating Stevens' charge and uncovering additional potential ADA violations in the course of such investigation, EEOC issued a Letter of Determination on October 1, 2014, notifying Glatfelter that there was reasonable cause to believe that it had violated the ADA with respect to Stevens and further had violated the ADA with respect to a specified class of aggrieved individuals. EEOC invited Glatfelter to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices identified and to provide appropriate relief.

11. The EEOC engaged in communications with Glatfelter to provide Glatfelter the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The EEOC was unable to secure from Glatfelter a conciliation agreement acceptable to the Commission.

13. On May 5, 2015, EEOC issued Glatfelter a Notice of Conciliation Failure.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

15. The DOT has promulgated regulations governing the physical qualification standard for drivers of Commercial Motor Vehicles. The DOT's physical qualification standard is promulgated at 49 C.F.R. § 391.41 *et seq.* (hereinafter "DOT physical qualification standard").

16. The DOT physical qualification standard applies to drivers of vehicles that are used on a highway in interstate commerce and meet the definition of a Commercial Motor Vehicle, as set forth in the regulations.

17. Glatfelter employees do not operate PITs on a highway in interstate commerce.

18. PITs are not Commercial Motor Vehicles under DOT regulations.

19. Operators of PITs are not subject by law to the DOT physical qualification standard.

20. Glatfelter's paper product manufacturing facilities in both Spring Grove and Chillicothe employ individuals in positions requiring operation of PITs.

21. At its Spring Grove facility, Glatfelter has adopted a physical qualification standard applicable to any position involving operation of PITs that copies the DOT's physical qualification standard.

22. Glatfelter has never conducted any validation studies or undertaken any other efforts to evaluate or establish that its qualification standard, copying the DOT

physical qualification standard for Commercial Motor Vehicles, is an accurate and predictive measure of ability to safely operate PITs in its facility or that such standard is not broader or more restrictive than necessary.

23. Though Glatfelter applies the DOT physical qualification standard to positions involving operation of PITs, Glatfelter does not similarly apply the DOT Exemption Programs, which permit drivers of Commercial Motor Vehicles to be licensed, even if they fail to meet the generally enumerated DOT physical qualification standard, based upon individualized analysis of the drivers' particular medical status and condition and his/her past driving performance and safety.

24. Operators of PITs at Glatfelter's Chillicothe production facility are not required to meet any physical qualification standard, and are instead subject to knowledge and operation based standards.

25. At its Spring Grove facility, Glatfelter requires all post-offer applicants and current employees seeking employment in positions involving operation of PITs to undergo medical exams/inquiries to determine whether they satisfy Glatfelter's physical qualification standard.

26. At its Spring Grove facility, if the results of a post-offer applicant's or current employee's medical exam/inquiry indicate that the applicant or employee does not meet its physical qualification standard, Glatfelter denies the otherwise

qualified applicant employment and/or denies the otherwise qualified employee employment in the desired position, including as a transfer or promotion.

27. The disqualified post-offer applicant or employee is subjected to such adverse employment actions on the basis of actual and/or perceived disabilities resulting from the application of Glatfelter's medical exam/inquiry and physical qualification standard.

28. At its Spring Grove facility, Glatfelter does not conduct any individualized analysis to determine whether - notwithstanding failure to meet its physical qualification standard and assuming the standard is permissible - the disqualified applicant or employee can nevertheless safely operate PITs, including through an operational exam, and does not consider any possible accommodations that might, if needed, enable the applicant or employee to safely operate PITs.

29. Stevens has suffered from substantial vision limitations in his right eye since early childhood when the eye was punctured.

30. In or about 2007, Stevens' right eye was removed as a result of an infection stemming from a corneal transplant intended to alleviate discomfort in that eye. Since the surgery, Stevens has had a right eye prosthesis.

31. Stevens' monocular vision substantially limits him in major life activities including seeing and/or in major bodily functions, including ocular functions, as compared to most people in the general population.

32. At all relevant times Stevens has suffered from an actual disability as defined by the ADA.

33. At all relevant times Stevens has had a record of disability as defined by the ADA.

34. In refusing Stevens employment, Glatfelter regarded Stevens as disabled as defined by the ADA, including by subjecting him to an employment action because of his actual or perceived physical impairment.

35. Stevens has significant experience operating PITs, and, notwithstanding his monocular vision, has safely and effectively operated PITs as part of his job duties for employers other than Glatfelter, both before and after his application with Glatfelter.

36. On or about February 19, 2010, Glatfelter offered Stevens conditional employment as a Trainee at its Spring Grove facility, subject to successful completion of its medical examination and satisfaction of its physical qualification standard.

37. On or about March 4, 2010, Stevens completed Glatfelter's pre-employment physical exam form and underwent a medical examination, through which Glatfelter confirmed Stevens' disability and record of prior treatment for same.

38. Glatfelter concluded that due to his disability Stevens did not satisfy Glatfelter's physical qualification standard for operation of PITs, a job duty allegedly required in the Trainee position, and therefore could not be employed.

39. On or about March 4, 2010, Glatfelter notified Stevens that it was rescinding his conditional offer of employment.

40. Glatfelter never conducted any individualized analysis of Stevens' actual ability to safely operate PITs, including through a driving test, nor did it consider accommodations that, if needed, would permit him to do so.

Count I.

41. EEOC hereby incorporates paragraphs 15 through 40.

42. Since at least May 2009, and on a continuing basis, Glatfelter has engaged in unlawful employment practices at its Spring Grove facility against Stevens and similarly situated post-offer applicants and employees who are otherwise qualified individuals with actual and/or perceived disabilities and were subjected to Glatfelter's physical qualification standard for positions involving PITs in violation of Sections 102(a), (b)(5), (b)(6) and Section 103(c); 42

9

U.S.C. §§ 12112(a), (b)(5), (b)(6); §12113(c). The unlawful employment practices include the following:

a. discriminating with respect to hiring, transfer, advancement and other terms, conditions and privileges of employment on the basis of disability;

b. using a physical qualification standard that screens out or tends to screen out individuals with disabilities where the qualification standard cannot be shown to be job-related for the position in question and consistent with business necessity;

c. using a physical qualification standard with criteria based on an individual's uncorrected vision where such criteria cannot be shown to be job-related for the position in question and consistent with business necessity; and

d. assuming Glatfelter's physical qualification standard is otherwise a lawful qualification standard, not conducting individualized inquiries of individuals who fail to meet the standard to determine whether they in fact cannot safely operate PITs and/or not considering or providing accommodation(s) that, if needed, would enable the individual to safely operate PITs.

43. The unlawful employment practices described in Count I resulted in loss of employment opportunities and/or adverse tangible employment actions and/or harms against aggrieved individuals.

44. The unlawful employment practices contained in Count I caused aggrieved individuals emotional and mental anguish, pain and suffering, stress, and humiliation and frustration.

45. The unlawful employment practices contained in Count I were done with malice or reckless disregard to the federally protected rights of the aggrieved individuals.

Count II.

46. EEOC hereby incorporates paragraphs 15 through 40.

47. Since at least May 2009, and on a continuing basis, Glatfelter has engaged in unlawful employment practices at its Spring Grove facility against current employees who were subjected to medical exams and/or inquiries as part of the administration of the physical qualification standard for positions involving PITs in violation of Section 102(d)(4)(A), 42 U.S.C. § 12112(d)(4)(A). The unlawful employment practices include the following:

   a. requiring employees seeking employment in any position involving operation of PITs to submit to a medical exam and/or inquiry that cannot be shown to be job-related and consistent with business necessity.

48. The unlawful employment practices contained in Count II were done with malice or reckless disregard to the federally protected rights of the aggrieved individuals.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Glatfelter, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in disability discrimination, including, but not limited to: utilizing overly broad and unlawful physical qualification standards; making employment decisions on the basis of disability; failing to conduct individualized inquiries and consider reasonable accommodations, if necessary; and any other employment practice that discriminates on the basis of disability in violation of the ADA.

B.  Grant a permanent injunction enjoining Glatfelter, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in disability discrimination, including, by subjecting current employees to unlawful medical exams and/or inquiries in violation of the ADA.

C.  Order Glatfelter to institute and carry out policies, practices, and programs that provide equal employment opportunities to qualified individuals with disabilities, that prohibit the use of unlawful physical qualification standards, that prohibit Glatfelter from subjecting employees to unlawful medical exams and/or

inquiries, and that eradicate the effects of its past and present unlawful employment practices.

D.   Order Glatfelter to make Stevens and the class of similarly situated post-offer applicants and employees described in Count I whole by providing appropriate back pay, inclusive of all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and all other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to instatement, promotion and/or transfer, or front pay in lieu thereof.

E.   Order Glatfelter to make Stevens and the class of similarly situated post-offer applicants and employees described in Count I whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F.   Order Glatfelter to make Stevens and the class of similarly situated post-offer applicants and employees described in Count I whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

G.   Order Glatfelter to pay Stevens and the class of similarly situated post-offer

applicants and employees described in Count I punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

FOR: EEOC

P. DAVID LOPEZ
GENERAL COUNSEL

JAMES L. LEE
DEPUTY GENERAL COUNSEL

GWENDOLYN YOUNG REAMS
ASSOCIATE GENERAL COUNSEL

DEBRA M. LAWRENCE
Regional Attorney

MARIA MOROCCO
Supervisory Trial Attorney

THOMAS RETHAGE (PA Bar 203524)
Senior Trial Attorney
EEOC – Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107

Phone: 215-440-2683
Fax: 215-440-2848
Email: thomas.rethage@eeoc.gov
Fed Bar No. 96035
*Petition for Special Admission Forthcoming*


__/s/ **Tanisha R. Wilburn**__
TANISHA R. WILBURN (NC Bar 38589)
Trial Attorney
EEOC– Washington Field Office
131 M Street, N.E. Suite 4NW02F
Washington, D.C. 20507
Phone: 202-419-0712
Fax:  202-419-0739
Email: tanisha.wilburn@eeoc.gov
Fed Bar No. 19271
*Petition for Special Admission Forthcoming*

ATTORNEYS FOR PLAINTIFF