IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, </br></br>Plaintiff </br></br>v. </br></br>P.H. GLATFELTER COMPANY, </br></br>Defendant. | Civil Action No.: 15-cv-01881 |

## CONSENT DECREE

This action was instituted by Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") against Defendant, P.H. Glatfelter Company ("Defendant" or "Glatfelter"), alleging violations of Sections 102(a), (b) and (d) and Section 103(c) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(a), (b), (d); 12113(c). The Commission alleges that since 2009, and on an ongoing basis, Glatfelter has violated the ADA and discriminated on the basis of disability including by, *inter alia*, administering an over-broad physical qualification standard for positions involving operation of powered industrial trucks ("PIT")[1] that is not job-related or consistent with business necessity, and failing to conduct individualized assessments of applicants' or employees' ability to effectively operate PITs and/or consider accommodations that, if needed, would enable the individual to do so. EEOC also alleges that Glatfelter has violated the ADA by administering unlawful medical exams or inquiries as part of its physical qualification standard.

EEOC has alleged that the above described unlawful employment practices resulted in adverse employment actions against covered individuals, including Charging Party Charles

---

[1] PIT, as used in this Decree, shall mean forklifts, clamp trucks, lift trucks and similar motorized industrial vehicles.

Stevens and aggrieved individual Sarah Stine, whose offers of employment were rescinded by Glatfelter based on its PIT qualification standard.

The EEOC and Defendant desire to resolve this action without the time and expense of continued litigation, and they desire to formulate a plan, to be embodied in this Consent Decree, that will resolve the EEOC's claims and promote and effectuate the purposes of the ADA. This Decree does not constitute an adjudication on the merits of the EEOC's claims and it shall not be construed as an admission by Defendant of any discrimination in violation of the ADA or any other law; nor shall it be construed as a waiver by the EEOC of its contentions of discrimination in violation of the ADA. The Parties, desiring to resolve the action by this Decree, agree and stipulate that this Court has jurisdiction over the Parties, the subject matter of the action, and enforcement of the Consent Decree. The Parties further agree and stipulate that this Court has the authority to enter and to enforce the Consent Decree and that the Consent Decree is final and binding upon EEOC, Defendant, and their agents, officers, employees, successors, and assigns.

The Court has examined this Consent Decree and finds that it is reasonable and just and in accordance with the Federal Rules of Civil Procedure and the ADA. Therefore, upon due consideration of the record herein, it is **ORDERED, ADJUDGED AND DECREED**:

1. This Decree resolves all claims alleged in the Complaint filed by the EEOC in this ADA action (15-cv-01881 – United States District Court for the Middle District of Pennsylvania).
2. This Decree shall be in effect for a period of three (3) years from the date it is entered by the Court.
3. Defendant and its officers, servants, employees, successors, and assigns are hereby enjoined from violating the provisions of Title I of the ADA, and shall refrain from discriminating or taking adverse employment actions against disabled individuals on the basis of their

disability or on the basis of the need to accommodate their disability, and further shall provide reasonable accommodations to such individuals as required by the ADA. Such non-discrimination shall include not using impermissible physical qualification standards; not conducting impermissible medical examinations or inquiries; and conducting, where required, individualized analysis of an applicant's or employee's ability to perform the essential functions of a position and/or need for reasonable accommodation.

4. Defendant will comply with all applicable record-retention regulations, including those found at 29 C.F.R. § 1602.14.

5. In full settlement of monetary damages alleged by the EEOC in this case, Defendant will, within thirty (30) days of entrance of this Decree, make payment to Stevens and Stine as follows:

To Stevens:

   a. Eighty-five thousand ($85,000) – for alleged back pay damages. Defendant shall withhold all applicable employee taxes and statutory deductions from the back pay award. Defendant's required employer contributions, including those under FICA, are separate from, and shall not be deducted from, the back pay award. Defendant shall report the back pay payment, and applicable withholdings, to the IRS and Stevens via an IRS Form W-2.

   b. Ten thousand ($10,000) – for alleged damages under Section 1981a. Withholdings and deductions shall not be applied to this damages payment. Defendant shall report such non-wage payment to the IRS and Stevens via an IRS Form 1099-MISC.

   c. Defendant shall make the above required payments via issuance of two separate checks in each designated amount. The checks shall be made payable to "Charles Stevens" and

shall be delivered to him via certified mail at an address provided by the Commission.

d. Defendant shall demonstrate compliance with this requirement by providing the EEOC, c/o EEOC's counsel of record, with a copy of each of the checks issued to Stevens.

To Stine:

a. Eighty-five thousand ($85,000) – for alleged back pay damages. Defendant shall withhold all applicable employee taxes and statutory deductions from the back pay award. Defendant's required employer contributions, including those under FICA, are separate from, and shall not be deducted from, the back pay award. Defendant shall report the back pay payment, and applicable withholdings, to the IRS and Stine via an IRS Form W-2.

b. Defendant shall make the above required payment via issuance of a check in the designated amount. The check shall be made payable to "Sarah Stine" and shall be delivered to her via certified mail at an address provided by the Commission.

c. Defendant shall demonstrate compliance with this requirement by providing the EEOC, c/o EEOC's counsel of record, with a copy of each of the check issued to Stine.

6. Defendant has adopted a revised physical qualification standard for applicants and employees entering positions requiring operation of PITs at its Spring Grove facility. Defendant shall ensure that the revised standard: is job-related and consistent with business necessity; does not rely exclusively on medical criteria without additional individualized assessment; includes a knowledge and/or skills component that permits an applicant or employee to demonstrate ability to safely and competently operate a PIT as they are used in the facility; closely relates to and appraises actual ability to operate PITs as they are used in

the facility; requires individualized assessment in determining the individual's ability to operate PITs as they are used in the facility; and requires consideration of reasonable accommodation, if needed, to permit the individual to effectively operate PITs and/or satisfy the qualification standard.

    a. Within ninety (90) days from the date of entry of the Decree, Defendant's revised physical qualification standard for operators of PITs will be disseminated to Human Resources officials and other personnel involved in review or selection of individuals for hire or transfer and administration of the qualification standard.

7. Within ninety (90) days from the date of entry of the Decree, Defendant will provide at least one and a half (1.5) hours of live training in federal laws prohibiting discrimination on the basis of disability to Human Resources officials and other personnel at the Spring Grove facility involved in review or selection of individuals for hire or transfer and administration of the revised qualification standard. Specifically, the training must include:

    a. Review and discussion of Defendant's ADA policy and accommodation process and Human Resources officials' and other personnel's role in the process;

    b. Review and discussion of Defendant's revised qualification standard developed pursuant to paragraph 6 above, to include: detailed review of the new standard and its criteria; completion of required forms; individualized assessments pursuant to the standard; utilization of individualized skills and/or operators tests; and consideration of reasonable accommodation(s) that may permit an otherwise qualified disabled individual to meet the standard and/or effectively operate PITs as they are used in the facility;

    c. Within ten (10) days of the completion of the training, Defendant will provide certification to the Commission's counsel of record that the training has occurred,

including the manner of conducting the training and ensuring attendance and identification of all individuals completing the training.

8. Within twenty (20) days after entry of the Consent Decree, Defendant will post in all places where notices to employees customarily are posted at all production facilities where PITs are operated, the Notice attached hereto as Exhibit A and made a part hereof. Said Notice shall be posted and maintained for the life of the Consent Decree and shall be signed by a responsible management official with the date of actual posting shown thereon. Should the Notice become defaced, marred, or otherwise made unreadable, Defendant will ensure that new, readable copies of the Notice are posted in the same manner as heretofore specified. Within ten (10) days of completion of the required posting, Defendant shall forward to the EEOC's attorney of record a copy of the signed Notice attached hereto and written certification that the Notice referenced herein has been posted as required and a statement of the locations and date(s) of posting.

9. During the term of the Consent Decree, EEOC is authorized to monitor compliance with the Decree, which may occur through inspection of Defendant's Spring Grove facility, attendance or observance of events required by the Consent Decree, interviews with Defendant's employees or representatives, production and inspection of Defendant's records, and other investigatory techniques provided for under 42 U.S.C. §§ 2000e-8, 2000e-9 or by EEOC regulation.

10. The Commission and Defendant shall bear their own costs and attorneys' fees.

11. All claims brought by the EEOC against Defendant in the instant action (15-cv-01881 – United States District Court for the Middle District of Pennsylvania) shall be dismissed with prejudice, subject to this Court's jurisdiction to enforce the provisions of this Consent

Decree.

The undersigned counsel of record hereby consent to the entry of the foregoing Consent Decree.

FOR DEFENDANT:

_____
Joseph J. Centeno, Esq.
Obermayer Rebmann Maxwell & Hippel, LLP
1617 JFK Blvd. – 19th Floor
Philadelphia, PA 19103
(215) 665-3107

FOR PLAINTIFF:

_____
Debra M. Lawrence
Regional Attorney

_____ /for
Maria Luisa Morocco           with permission
Supervisory Trial Attorney

_____
Thomas D. Rethage, Jr.
Senior Trial Attorney
EEOC Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107
(215) 440-2683

**SO ORDERED.**

Signed and entered this 22nd day of January, 2016.

s/Yvette Kane
_____
Hon. Yvette Kane
United States District Court Judge

7

Exhibit A

### NOTICE TO APPLICANTS AND EMPLOYEES POSTED PURSUANT TO A CONSENT DECREE BETWEEN THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND P.H. GLATFELTER COMPANY

P.H. Glatfelter Company ("Glatfelter") is fully committed to maintaining a workplace where all applicants and employees are free from illegal discrimination, including discrimination based on disability, as is recognized by Glatfelter's employment policies and required by federal law, including the Americans with Disabilities Act ("the ADA"). The ADA prohibits Glatfelter from making any decisions about employment (such as hiring, transfer, promotion, etc.) based on an applicant's or employee's disability. The ADA also requires Glatfelter to use only job-related physical qualification standards and to provide a reasonable accommodation to any disabled applicant or employee that permits him/her to participate in the application process, perform the essential functions of his/her existing or desired position (including meeting any qualification standards), and/or to enjoy equal benefits and privileges of employment - provided such accommodation does not create an undue hardship on Glatfelter.

**We want you to know that:**

(1)     We are 100% dedicated to upholding the law and our policies.

(2)     We will not discriminate or tolerate any discrimination against employees or applicants on any impermissible basis, including disability.

(3)     We will make personnel decisions based on individualized assessments of applicants' and/or employees' qualifications for positions sought.

(4)     We will make reasonable accommodations to applicants and employees with disabilities. Any applicant or employee needing a reasonable accommodation should notify the Human Resources Department.

(5)     If you have any questions about employment discrimination or reasonable accommodation, you should contact the Human Resources Department. You may also contact the Equal Employment Opportunity Commission (see www.eeoc.gov for local office contact info).

P.H. GLATFELTER COMPANY

Dated: _____     By: _____

Title: _____